**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| MAPLEWOOD PARTNERS, L.P., MAPLEWOOD MANAGEMENT, L.P., and MAPLEWOOD HOLDINGS, LLC, | Miscellaneous Action No. 3-11MC0050-B |
| Plaintiffs, | (This action is currently pending in the United States District Court for the Southern District of Florida) |
| vs. | |
| INDIAN HARBOR INSURANCE COMPANY, | CASE NO. 08-23343-CIV-HOEVELER |
| Defendant. | |

**JULIO & SONS COMPANY'S OPPOSITION TO
INDIAN HARBOR INSURANCE COMPANY'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS PURSUANT TO A NON-PARTY SUBPOENA**

**PATTON BOGGS LLP**

Joseph M. Cox
State Bar No. 04950200
jcox@pattonboggs.com
Shannon W. Conway
State Bar No. 24052047
sconway@pattonboggs.com
Shana L. Burleson
State Bar No. 24045586
sburleson@pattonboggs.com
Patton Boggs LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Telephone: (214) 758-3417
Facsimile: (214) 758-1550

**Of Counsel:**

**DICKSTEIN SHAPIRO LLP**

John W. Schryber
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

*Attorneys for Julio & Sons Company*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.        INTRODUCTION .............................................................................................1

II.       RELEVANT FACTS .........................................................................................3

III.      ARGUMENT ....................................................................................................6

          A.    Julio's Sharing of Privileged Documents with MapleWood Under the Joint
                Defense Agreement Does Not Waive Julio's Privileges ....................................6

          B.    Julio's Production of Redacted Invoices to its Own Insurer Does Not Waive
                Julio's Work Product Claim .............................................................................9

          C.    Julio's Production of its Objections on December 2, 2010 Does Not Waive
                Julio's Privileges...........................................................................................12

IV.       CONCLUSION ...............................................................................................14

DOCSNY-463594v1

# TABLE OF AUTHORITIES

Page

Cases

*Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed. Cir. 1987)...................................................9

*Chaudry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) ...............................................................10

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646 (9th Cir. 1980) ......................................9

*Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869 (5th Cir. 1991)...........................................10

*Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414 (E.D. Tex. July 9, 2003)........................................................................................................................6

*Ferko v. NASCAR*, 219 F.R.D. 403 (E.D. Tex. 2003)..................................................................8

*Fugro-McClelland Marine Geosciences, Inc . v Steadfast Ins. Co.*, No. H-07-1731, 2008 WL 5273304 (S.D. Tex. Dec. 19, 2008) ...................................................................................8

*Hickman v. Taylor*, 329 U.S. 495 (1947) ....................................................... 1, 10, 11, 12

*Hill v. Hunt*, No. 3:07-CV-02020-O, 2008 WL 4108120 (N.D. Tex. Sept. 4, 2008)...............8, 10

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ...........................................................13

*In re Erickson*, Bankruptcy No. 00-31724, 2007 WL 4868301 (Bankr. D.N.D. July 19, 2007)..........................................................................................................................13

*In re Grand Jury Proceedings*, 43 F.3d 966 (5th Cir. 1994)......................................................11

*In re Grand Jury Witness (Salas)*, 695 F.2d 359 (9th Cir. 1982) ...............................................10

*In re Horn*, 976 F.2d 1314 (9th Cir. 1992)................................................................................10

*In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001)............................................................8

*Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969 (N.D. Tex. Sept. 22, 1998) ...................................................................................................7

*Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627 (N.D. Tex. 2009) ...............................13

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992)...................................................................................................................12

*Owens-Corning Fiberglass Corp. v. Caldwell*, 818 S.W.2d 749 (Tex. 1991) ..............................11

DOCSNY-463594v1

*Power Mosfet Techs. v. Siemens AG*, 206 F.R.D. 422 (E.D. Tex. 2000) ........................................8

*S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310 (N.D. Tex. 2009) ..................................................12

*Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163 (E.D.N.Y. 1988), *aff'd*, 870 F.2d 642 (Fed. Cir. 1989)..........................................................................................................9

*Stonehenge/Fasa-Texas, JDC, L.P. v. Miller*, No. 3:94-cv-0912-G, 1998 U.S. Dist. LEXIS 18569 (N.D. Tex. Nov. 23, 1998) ..............................................................10

*United States  v. Mobil Corp.*, 149 F.R.D. 533 (N.D. Tex. 1993) ..............................................11

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ......................................................10

Rules

Fed. R. Civ. P. 26(b)(1) .............................................................................................3

Fed. R. Civ. P. 26(b)(3) ...............................................................................7, 10, 11, 12

Fed. R. Civ. P. 45 .....................................................................................................13

Local Rule 7.1 ....................................................................................................5, 14

Other Authorities

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d Ed. 2010)................................................................................................................11

## I.        INTRODUCTION

This is a discovery motion proceeding arising out of, and ancillary to, an insurance coverage litigation pending in the United States District Court for the Southern District of Florida, styled as *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, (S.D. Fla.) (Hoeveler, J.).  That mother litigation was brought by MapleWood Partners, L.P. and two of its affiliates ("MapleWood") against their insurer, Indian Harbor Insurance Company ("Indian Harbor"), to redress (among other things) Indian Harbor's reneging on its agreement with MapleWood to pay all reasonable defense costs that MapleWood would incur in a lawsuit styled *Retail and Rest. Growth Capital, L.P. v. MapleWood Partners, L.P., et al.*, Case No. DC-07-01391-G (Dist. Ct., Dallas County, Tex.), which named both MapleWood and Julio & Sons Company ("Julio") as defendants.

Julio, which is not a party to the mother litigation, submits this memorandum in opposition to Indian Harbor's motion to compel Julio to produce: (i) documents reflecting legal advice Julio sought from Julio's counsel respecting the *RRGC* litigation, and Julio's counsel's work product which Julio shared with MapleWood pursuant to a joint defense agreement that precluded MapleWood from sharing the documents with non-parties, and further provided that MapleWood did not have the power to waive any privilege held by Julio; and (ii) invoices for legal fees prepared by Julio's counsel that catalogued, on a day-to-day basis, the legal work that Julio's counsel performed for Julio in the *RRGC* litigation (through the date that litigation settled in September 2010) and which were produced to Julio's own insurer, Travelers Casualty and Surety Company of America, in a form redacted to preserve all privileges.

Ignoring the law of attorney client privilege of Texas (and of all other states) and the federal law of work product immunity under *Hickman v. Taylor*, 329 U.S. 495 (1947), applicable in federal court proceedings, Indian Harbor argues that Julio has been disabled from claiming

any privilege by actions taken entirely by third parties.  According to Indian Harbor, Julio cannot assert a sustainable privilege claim because of the combination of the following two actions, each of which was taken by a party *other than* Julio: (i) *RRGC's* bringing litigation against MapleWood and Julio; and (ii) *Indian Harbor's* disbursement of a fraction of the total defense funds to MapleWood (totaling approximately 6% of MapleWood's defense expenses). According to Indian Harbor, its act of providing (arbitrarily *de minimis*) defense funding to its own insured, MapleWood, somehow precludes Julio from invoking, against MapleWood's insurer, its own privileges in the documents shared under the joint defense agreement.

The only "precedent" Indian Harbor cites for this counter-intuitive proposition is a ruling entered by the magistrate judge on March 1, 2011 in the mother litigation, which ruling currently is under review by the presiding District Judge, but which, in any event, says no such thing.  In that ruling, the magistrate said nothing about any privilege claim of Julio or any "waiving conduct" of Julio.  To the contrary, the magistrate held that his ruling was based on conduct of *MapleWood* that, under a Florida state statute, precluded *MapleWood* from invoking privileges held by *MapleWood*.  Indeed, the law universally holds that a privilege held by the claimant, whether singularly or jointly with another, cannot be waived absent waiving conduct by that claimant.

Julio also did nothing to waive its privilege claim as to the redacted invoices it provided to its own insurer.  Descriptions that disclosed Julio's counsel's work product were *redacted*.  The time and expense descriptions which were not redacted are utterly irrelevant to the issue presented in the mother litigation of whether the legal fees of *MapleWood's* litigation counsel were reasonable.  (If necessary, Julio is prepared to provide these invoices, in their redacted and unredacted form, to this Court for *in camera* review).

2

Accordingly, Indian Harbor's motion should be denied in all respects.

## II.    RELEVANT FACTS

Although Federal Rule of Civil Procedure 26(b)(1) limits a discovery proponent in a federal litigation to discovery that targets only "*non*privileged matter that is relevant to any party's claim or defense," (Fed. R. Civ. P. 26(b)(1)), this dispute arises from a subpoena issued by Indian Harbor which specifically targeted *RRGC* suit-related "communications between [i] counsel for Julio [and] [ii] MapleWood (or its counsel)," Julio's joint defense partner under a joint defense agreement respecting the *RRGC* litigation. *See* Indian Harbor's Appendix ("IH Appx.") at p. 31, Request No. 5.

The joint defense agreement between Julio and MapleWood dated March 7, 2007 (*see* Julio's Appendix ("Julio Appx.") at pp. 1-7) recited the fact that Julio and MapleWood had a "common interest" in the *RRGC* litigation that would preclude a claim of privilege waiver by either party's sharing of a privileged document with the other party to the joint defense agreement. *Id.* at p. 1, ¶ 1. To further protect against any claim of waiver, the joint defense agreement provided that MapleWood could not share privileged material with any entity not a party to the joint defense agreement (such as Indian Harbor). *Id.* at pp. 2-3, ¶¶ 2-3.

In June 2007, MapleWood's insurer, Indian Harbor, agreed that the *RRGC* suit was a covered claim under MapleWood's policy and, thus, that Indian Harbor was obligated to indemnify MapleWood's liability to MapleWood's own counsel for defense costs in the *RRGC* suit. Julio Appx. at pp. 8-20, pp. 5-8. However, despite this agreement as to coverage, Indian Harbor disbursed no funds to MapleWood. Indeed, within several months, Indian Harbor repudiated its obligation by "allocating" defense expenses to "uncovered loss" incurred by MapleWood even though, as Indian Harbor would later admit at its April 1, 2011 deposition in the mother litigation, Indian Harbor did so without being able to answer whether the trigger for

3

allocation had ever occurred, namely the occurrence of some "uncovered loss" by MapleWood. Julio Appx. at pp. 57-60, 148:16-159:16.[1] Magistrate Turnoff, presumably assuming that Indian Harbor would not confess (as it did on April 1) to an arbitrary allocation scheme, and further assuming that Florida law operates to preclude a defense-demanding insured from invoking a claim of privilege against a defense-performing insurer, ruled on March 1, 2011 that MapleWood could not assert privilege claims against Indian Harbor. That ruling, which does not mention Julio or any conduct by Julio, and which was entered in a proceeding to which Julio is not a party, is currently on "appeal" by MapleWood to the presiding District Judge pursuant to objections filed by MapleWood on March 16, 2011. (To provide the Court with the context of the magistrate's ruling, Julio has submitted, with this memorandum, the briefing on MapleWood's objections to that ruling (Julio Appx. at pp. 141-173)).

With respect to Indian Harbor's demand for documents subject to a privilege held by Julio, Indian Harbor made that demand in the subpoena it issued to Julio in November 2010. In addition to seeking Julio-privileged documents that Julio had shared with its common interest partner, MapleWood, the subpoena demanded unredacted invoices describing the services performed by Julio's counsel in defense of the *RRGC* suit. IH Appx. at p. 35, Request No. 38. Pursuant to an agreement reflected in an email from Indian Harbor's lead counsel, Sally Gere, Indian Harbor gave Julio an extension to serve objections and produce documents to a date "two

---

[1]     Indian Harbor testified at its April 1, 2011 deposition that when it allocated MapleWood's legal fees to "uncovered loss," it did "not know" whether MapleWood had incurred any allocation-triggering "loss" at all.  Julio Appx. at pp. 57-60, 148:16-159:16.  In addition, Indian Harbor confessed that the legal fees claimed by MapleWood for coverage were, in fact, "Defense Expenses."  *Id.* at pp. 22-23, 8:1-11:15; pp. 23-24, 10:5-11:15; 28, 31:7-15. The Policy defines Defense Expenses as a species of "Loss" (capital "L") and, thus, something incapable of being deemed the lowercase-l "loss" which allows for allocation.  Julio Appx. at pp. 113, §§ I(C), I(G).  Through this artifice, Indian Harbor has paid only 6% of MapleWood's defense expenses, necessitating MapleWood's coverage action for a material breach of the Policy.

DOCSNY-463594v1

weeks" after the subpoena's nominal return date (of December 2) to December 16, 2010. Julio

served its objections on December 2 and, on December 16, Julio produced over 12,000 pages of

non-privileged documents. Dkt. 2 at 4.[2]

On February 22, 2011, Julio served a privilege log that accounted for each category of

documents withheld by Julio under claim of privilege, including the two categories targeted by

Indian Harbor's instant motion – privileged materials shared with MapleWood under the March

2007 joint defense agreement and unredacted invoices of Julio's litigation counsel cataloguing

counsel's activities and mental impressions.[3]

Although the privilege log is the document which formally details the privileges that

are generally invoked in a party's written objections to a document demand, Indian Harbor never

contested the bases of the claims of privilege articulated in Julio's log prior to this motion. As

---

[2]      Indian Harbor represents, albeit without a supporting affidavit, that "not a single Subpoena Request sought these documents." Dkt. 2 at 4. In fact, each of the 12,000-plus documents produced by Julio was requested by the subpoena, which was extraordinarily broad in its scope. For example, the Subpoena requested "[a]ll communications and documents pertaining to the settlement and/or the negotiation of the settlement of the RRGC Action." IH Appx. at p. 31, Request No. 6. Among the documents produced by Julio (and RRGC pursuant to a subpoena issued to it by Indian Harbor) were the drafts and final version of the settlement agreement, the communications among counsel in negotiating that settlement, as well as the pleadings, deposition transcripts, discovery, and expert reports and valuations exchanged in the *RRGC* litigation.

[3]      Indian Harbor presumes that the documents withheld by Julio were distributed to "third parties," such as "lenders." Dkt. 2 at 2. Julio's privilege log, however, identifies the distributees of each category of withheld documents, and "lenders" and the like are not among them. IH Appx. at p. 84. Indian Harbor chose to bring this action without a meet-and-confer with Julio about the distributees identified on the log. The courts require that the place for a putative movant to test factual hypotheses needed to bring a discovery motion is in a meet-and-confer, and not in the motion itself. *See* LR 7.1. Yet, Indian Harbor admits that its last meet-and-confer was "February 15, 2011" (Dkt. 2 at 4) – one week *before* Julio served its privilege log listing distributees. Indian Harbor also erroneously asserts that Julio's log fails to identify the privilege claimed. Dkt. 2 at 4-5. This also is erroneous. The log identifies, for each category of withheld document, the specific privilege (work product or attorney-client privilege) invoked. IH Appx. at p. 84. Again, however, if Indian Harbor had an issue with the log, it was required to meet-and-confer with Julio on that subject *before* making its motion.

DOCSNY-463594v1

Indian Harbor acknowledges in its moving papers, the last time it spoke to Julio's coverage counsel (or attempted to do so) on the issue of privilege was a week before the log was served, "February 15, 2011." These privileged documents also are objected to on the basis that they are not likely to lead to the discovery of relevant and admissible evidence.

## III. ARGUMENT

### A. Julio's Sharing of Privileged Documents with MapleWood Under the Joint Defense Agreement Does Not Waive Julio's Privileges

Indian Harbor claims that Julio's sharing of privileged documents with MapleWood pursuant to their joint defense agreement respecting the *RRGC* suit precludes Julio from withholding these documents from Indian Harbor. <u>First</u>, Indian Harbor asserts, without citation to any legal authority, that a joint defense agreement somehow does not establish a common legal interest in the conduct of the litigation. In fact, Julio's joint defense agreement does establish a common interest in the conduct of the litigation, as Julio and MapleWood each were defendants on multiple counts in the complaint filed by RRGC (Julio Appx. at pp. 175-189), and each had a legal interest in seeing those counts defeated. Indian Harbor, albeit unwittingly, gilds this lily by acknowledging that Julio also had an *economic* interest in seeing MapleWood succeed in its defense because of an agreement Julio had with MapleWood that made Julio MapleWood's "indemnitor" on RRGC's claims (subject to certain conditions). Dkt. 2 at 1, 9.

<u>Second</u>, Indian Harbor argues that the joint defense agreement between Julio and MapleWood, although prohibiting disclosure of Julio-privileged documents to Indian Harbor (or any other third party), should be "deemed" to allow for and, indeed, require, the production of such documents to Indian Harbor. However, it is axiomatic that a waiver requires proof of the claimant's *intentional* relinquishment of a known right and that "'an offensive use waiver of privilege should not lightly be found.'" *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225,

2003 WL 21653414, at *3 (E.D. Tex. July 9, 2003). Yet, Indian Harbor argues that Julio is precluded from invoking its privileges against Indian Harbor based on acts of parties *other than* Julio: (i) RRGC's act of suing MapleWood and Julio; and (ii) Indian Harbor's act of belatedly and fractionally funding MapleWood's defense costs in response to MapleWood's demand for defense coverage made approximately two years earlier.

The only legal support proffered by Indian Harbor for its theory of waiver via third-party acts is Magistrate Turnoff's March 1 ruling. Dkt. 2 at 6. However, as noted, that ruling – which is currently under review by the District Judge – does not support Indian Harbor's theory. In fact, that ruling: (i) does *not* address any claim of privilege by Julio; (ii) does *not* refer to any conduct by Julio, much less any "privilege waiving" conduct by Julio; (iii) does *not* hold that a privilege can be waived by conduct of parties other than the privilege holder but, instead, held that *MapleWood* was precluded from invoking a privilege claim by *MapleWood's* own conduct of demanding and accepting defense funding from a performing insurer (who would not confess to its arbitrary allocation scheme until one month later); (iv) does *not* apply Texas law of attorney-client privilege, which applies to privilege claims of Texas residents such as Julio (applying, instead, a Florida state statute); and (v) does *not* apply federal law governing work product claims, i.e., *Hickman v. Taylor*, *supra* and Federal Rule 26(b)(3), which law applies in federal proceedings such as this federal proceeding and the Florida federal proceeding.[4]

Indeed, Indian Harbor has misapprehended a fundamental aspect of the "common interest" doctrine as recognized in Texas and elsewhere: the doctrine, if applicable, does not operate to *effect* a waiver of privilege. To the contrary, a common interest between the privilege

---

[4]     The "resolution of th[e] [work product] issue is governed by federal law" in federal court cases. *Interphase Corp. v. Rockwell Int'l. Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969, at *4 (N.D. Tex. Sept. 22, 1998).

holder and another litigant allows for the sharing of the holder's privileged documents *without* effecting a waiver.  Thus, even if Indian Harbor held a "common interest" with Julio, it would simply mean that Julio's production of a privileged document to Indian Harbor would not effect a waiver to a third party.  It would *not* mean that Julio was *obligated* to produce privileged documents to Indian Harbor.  *Ferko v. NASCAR*, 219 F.R.D. 403, 405 (E.D. Tex. 2003) (quoting *Power Mosfet Techs. v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. 2000)) ("common interest" has the effect of "extend[ing] a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications to parties with the common interest"); *Hill v. Hunt*, Civil Action No. 3:07-CV-02020-O, 2008 WL 4108120, at *7 (N.D. Tex. Sept. 4, 2008) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("common interest" protects "communications between co-defendants in actual litigation and their counsel").[5]

What is more, in *Fugro-McClelland Marine Geosciences, Inc . v Steadfast Ins. Co.*, No. H-07-1731, 2008 WL 5273304, at *3 (S.D. Tex. Dec. 19, 2008), the court held that an insurer is not even entitled to its *own* policyholder's privileged documents respecting an underlying lawsuit for which the policyholder was seeking liability coverage.  The *Fugro* court reasoned that where the insured's defense is being funded *but not controlled by* the insurer, the insured still has a "reasonable expectation of confidentiality in the communications at the time they were made," *id.*, precluding the notion that the insured's receipt of insurance funding, without more, waives the privilege.  The Policy that Indian Harbor sold to MapleWood, like the policy in *Fugro*, provides that the insured is entitled to its own counsel and that Indian Harbor may *not* control the insured's defense.  Julio Appx. at pp. 114-115, § II(B).

---

[5]   Moreover, the joint defense agreement provides that it is a written memorialization of the parties' agreement as of the inception of the *RRGC* case, which was filed just one month earlier. Thus, Indian Harbor's suggestion that there was no "common interest" amongst joint defendants until the formal joint defense agreement was executed is baseless.

8

Equally erroneous is Indian Harbor's argument that these privileged communications could be *relevant*. Dkt. 2 at 2 (Indian Harbor's speculation that the privileged documents could reflect legal advice and work product concerning the settlement negotiations in the *RRGC* action). A speculation as to relevancy, even if true, does not overcome a valid and non-waived claim of *privilege*. Moreover, in the case of work product, the party seeking to invade the privilege must present facts establishing its "substantial need" for the documents. Not surprisingly, Indian Harbor does not proffer a "substantial need" affidavit here. Indian Harbor is seeking a fishing expedition for hypothetically relevant evidence at the expense of a non-party. "[W]hile discovery is a valuable right and should not be unnecessarily restricted, necessary restriction may be broader when a nonparty is the target of discovery." *See, e.g., Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (the law holds "quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents"); *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987) (affirming district court's restriction of discovery where nonparty status "weigh[ed] against disclosure"); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (nonparty status a significant factor in determining whether discovery is unduly burdensome), *aff'd*, 870 F.2d 642 (Fed. Cir. 1989).

B.    **Julio's Production of Redacted Invoices to its Own Insurer Does Not Waive Julio's Work Product Claim**

Indian Harbor challenges Julio's withholding of invoices for legal services rendered on its behalf by its own counsel on the basis that: (i) they do not constitute attorney work product; but, if they do, (ii) they still cannot be protected because they related to a "prior, completed" litigation and Julio is "merely" an "indemnitor" of MapleWood in the coverage litigation and not a formal party there. Indian Harbor is wrong again.

9

The invoices reflecting counsel's mental impressions from a prior litigation, in addition to being manifestly irrelevant to the coverage dispute between Indian Harbor and MapleWood,[6] is classic attorney work product. As such, it is protected by the doctrine articulated in the seminal holding in *Hickman v. Taylor, infra*.[7] "Like the attorney-client privilege, the [federal] work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)). In *Hickman*, the Supreme Court made clear that a party may only obtain protected work product upon a substantial "showing of necessity" – a showing made only in "a rare situation." *Hickman*, 329 U.S. at 513.[8]

---

[6]   At page 11 of its moving brief, Indian Harbor asserts that the invoices of Julio's counsel would be relevant "if" (i) Julio's counsel had represented MapleWood officer "Robert Glaser," who also was a defendant in the *RRGC* suit (based on his alleged conduct as a MapleWood officer); and (ii) fees for any representation by Julio's counsel of Mr. Glaser had been paid by other insurance sold to Julio (by Travelers). But it is a matter of record that Mr. Glaser was represented in the RRGC action by counsel *other than* Julio's counsel. Thus, the time records of Julio's counsel are utterly irrelevant to the issue of legal fees of *Mr. Glaser's* counsel.

[7]   Indian Harbor's assertion that the legal invoices of Julio's counsel are incapable of being work product is incorrect. *Stonehenge/Fasa-Texas, JDC, L.P. v. Miller*, No. 3:94-cv-0912-G, 1998 U.S. Dist. LEXIS 18569 (N.D. Tex. Nov. 23, 1998), on which Indian Harbor relies, does not advance Indian Harbor's statement. *Stonehenge* did not involve a litigant seeking to secure invoices for legal services rendered to and on behalf of another. The well-settled rule is that where counsel's invoices reflect "the advice sought and legal issues researched," they are, in fact, attorney work product. *Hill*, 2008 WL 4108120, at *7 (citing *Chaudry v. Gallerizzo*, 174 F.3d 394, 402-403 (4th Cir. 1999) (acknowledging that some decisions, including *Stonehenge* (cited by Indian Harbor), have found legal invoices not to be protected); *see also In re Horn*, 976 F.2d 1314, 1317-18 (9th Cir. 1992) (disclosure of billing records pursuant to a subpoena "reveal the client's motivation for seeking legal representation, the nature of the services provided or contemplated, strategies to be employed in the event of litigation, and other confidential information exchanged during the course of the representation", and would thus be "an unjustified intrusion into the attorney-client relationship"); (citing *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir. 1982)).

[8]   Federal Rule 26(b)(3) governs work product claims by a "party" or its "indemnitor" (and certain others) in the federal court action in which a compulsion order for tangible work product is sought (here, this ancillary action to which Julio, the alleged "indemnitor" of MapleWood, is a

DOCSNY-463594v1

Indian Harbor makes no such showing.  Instead, Indian Harbor posits that the work product of Julio's counsel was somehow rendered unprotected as of the moment the *RRGC* litigation settled and, therefore, is fair game in the MapleWood coverage action.  This same argument was considered and rejected by the Fifth Circuit in *In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994).  There, the court held that Federal Rule 26(b)(3) was no bar to a non-party's right to rely on *Hickman v. Taylor* to prevent the discovery of work product of a non-party to a later proceeding which was created when the client was a party to a prior proceeding – the same situation that exists here if the "later proceeding" is imagined to be the coverage proceeding (rather than this proceeding which, of course, Julio *is* a party to).  The court rejected the argument that the work product privilege recognized in *Hickman* "evaporates when the litigation for which the document was prepared has ended."  The court recognized the "emerging majority view among the circuits" that the work product privilege extends to subsequent litigation (*id.*) and reaffirmed the well-settled Fifth Circuit precedent that the privilege-holder's right to protection of its counsel's work product *does* continue after the litigation, for which it was prepared so as to remain inviolate in later proceedings which the holder may or may not be a party to.  *Owens-Corning Fiberglass Corp. v. Caldwell*, 818 S.W.2d 749, 751 (Tex. 1991) (ruling that the underlying purpose of the work product doctrine would otherwise be "totally defeated" were the work product protections not extended beyond the conclusion of the litigation, an "anomaly [that] clearly cannot be allowed") (citing Fed. R. Civ. P. 26(b)(3) and *Hickman v. Taylor*); *see also* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024, at p. 526 (3d Ed. 2010) ("it must be remembered that protection may exist

"party"). *Hickman* continues to govern work product claims by non-parties and claims respecting intangible work product. *See, e.g., United States v. Mobil Corp.*, 149 F.R.D. 533 (N.D. Tex. 1993).

11

under *Hickman v. Taylor* itself, even if it is not provided also under the rule, so long as the materials in question were prepared in anticipation of litigation by an attorney"); *accord Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992) (remanded motion to compel nonparty discovery to conduct and apply work product doctrine analysis).

In any event, Federal Rule 26(b)(3) – which is narrower in its procedural scope than the protection afforded under *Hickman v. Taylor* – states that the work product immunity may be relied upon, *not* just by a "party" in the proceeding in which discovery of the work product is sought. FED. R. CIV. P. 26(b)(3). Rather, the rule holds that the putative "indemnitor" of a party also may invoke the rule's protections. Indian Harbor affirmatively asserts that Julio *is* an "indemnitor" of MapleWood.[9] What is more, there is no dispute that Julio is a formal "party" to the proceeding in which the discovery of work product is sought, i.e., this proceeding.[10]

Accordingly, under both the Supreme Court's holding in *Hickman* (applicable to non-parties) and Federal Rule 26(b)(3) (applicable to parties to the proceeding in which the discovery is sought), the work product sought by Indian Harbor has been, and remains, protected – notwithstanding the settlement of the underlying *RRGC* litigation.

### C.   Julio's Production of its Objections on December 2, 2010 Does Not Waive Julio's Privileges

Julio served its objections to the November 2010 subpoena on December 2, 2010. IH Appx. at pp. 42-83. This cannot be "late" because Indian Harbor agreed to an extension for the

---

[9]   Julio does not deny that it is an "indemnitor" of MapleWood under certain conditions, but disagrees with Indian Harbor's view on what conditions trigger that obligation.

[10]   Indian Harbor's reliance on *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310 (N.D. Tex. 2009), is curious as the claimant there did not rely on *Hickman v. Taylor* and, unlike Julio here, was not a party to the proceeding in which the discovery was sought. In any event, the court held that the documents were not protected because they were prepared for non-litigation purposes.

DOCSNY-463594v1

service of Julio's objections and its documents to December 16, 2010.  Julio Appx. at pp. 190-192.[11]  In any event, Federal Rule 45 allows "a reasonable time" to prepare the privilege log that formally presents the discovery respondent's privilege objections.  *In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998); *In re Erickson*, Bankruptcy No. 00-31724, 2007 WL 4868301 (Bankr. D.N.D. July 19, 2007) (because Rule 45 does not impose a time limit for when a privilege log must be supplied, courts generally permit them to follow within a reasonable time or in a timely fashion).

Indian Harbor also appears to assert that Julio should be deemed to have waived its privileges because the log that Julio did produce on February 22, 2011 is only a "single page." Dkt. 2 at 8-9.  Indian Harbor must be assuming that this Court will not actually look at the log, because Julio's log informs the reader of what type of documents are being withheld, to whom they were distributed, and what privilege is being claimed.  The fact that the log is only a "single page" does not mean that this information is absent.  Indeed, the log identifies, by subject matter category, each withheld document, the dates during which documents within each category were created or received, the basis of the particular privilege claim, and the distributees for each document withheld.  IH Appx. at p. 84.  The only information not provided is the exact date within the range of dates provided that the document was created or generated.  To provide this information, Julio, a non-party to the coverage action, would have had to devote dozens of hours

---

[11]     Moreover, the case cited by Indian Harbor for the proposition that a late objection waives all privileges, *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627 (N.D. Tex. 2009), says no such thing.  *Isenberg* did not involve a claim of privilege, much less a waiver of a privilege claim.  The case involved a motion (for reconsideration of a default judgment) that had been granted in part because the defendant had provided inadmissible evidence in support of its damages calculations.  The defendant was ordered to submit evidence and a brief explaining its evidence (and responding to the plaintiff's evidentiary arguments) by a date certain, after which, the plaintiff was to respond and raise evidentiary objections.  The plaintiff was explicitly warned that her failure to do so would be deemed a waiver and that a final default judgment would be entered against her if she did not comply.  The court deemed the plaintiff's failure to comply as a waiver of any evidentiary objections she may have had.

DOCSNY-463594v1

to itemizing this dating data from nearly every document ever generated by Julio or its counsel over the $3^1/_2$ year history of the *RRGC* litigation.  Yet, the precise date of a document within the specified date range is *not* relevant to any privilege or waiver claim here.  Indian Harbor does not even contend that a privilege would be lacking if a document fell "earlier" or "later" in the date ranges provided for each category of document.

In any event, as noted in note 3, *supra*, to the extent Indian Harbor is basing this motion on the privilege log's alleged failure to specify dates within specified date ranges, the motion is infirm.  Local Rule 7.1 requires that any discovery motion be predicated on a meet-and-confer in which the alleged discovery deficiency was discussed.  Indian Harbor admits that it last met-and-conferred with Julio on "February 15, 2011" – one week *before* the log was served.  Thus, by Indian Harbor's admission, until it made this motion, it never claimed any deficiency in Julio's log.

## IV.	CONCLUSION

Based on the foregoing, Julio respectfully requests that this Court deny Indian Harbor's motion in its entirety, and for such other and further relief as the Court deems to be just and proper.

14

Respectfully submitted,

**PATTON BOGGS LLP**

/s/ Joseph M. Cox
Joseph M. Cox
State Bar No. 04950200
jcox@pattonboggs.com
Shannon W. Conway
State Bar No. 24052047
sconway@pattonboggs.com
Shana L. Burleson
State Bar No. 24045586
sburleson@pattonboggs.com
Patton Boggs LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Telephone: (214) 758-3417
Facsimile: (214) 758-1550

**Of Counsel:**

**DICKSTEIN SHAPIRO LLP**

John W. Schryber
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

*Attorneys for Julio & Sons Company*

15

## CERTIFICATE OF SERVICE

I certify that on the 13th day of May, 2011, I filed the foregoing Opposition of Julio & Sons Company to Defendant Indian Harbor Insurance Company's Motion to Compel Production of Documents Pursuant to a Non-Party Subpoena with the Clerk of the Court using CM/ECF. I also certify that the foregoing document has been served on all counsel listed below via United States First Class Mail.

/s/ Shana L. Burleson
Shana L. Burleson

| HENSLEE SCHWARTZ, LLP | TROUTMAN SANDERS LLP | VER PLOEG & LUMPKIN |
|---|---|---|
| Susan Abbott Schwartz<br>State Bar No. 00797900<br>sschwartz@hensleeschwartz.com<br>Robert B. Padgett<br>State Bar No. 00786152<br>bpadgett@hensleeschwartz.com<br>Henslee Schwartz LLP<br>6688 N. Central Expressway<br>Suite 850<br>Dallas, TX 75206<br>Telephone: (214) 219-8833<br>Facsimile: (214) 219-8866 | Elizabeth Sarah Gere<br>Steven W. McNutt<br>Troutman Sanders, LLP<br>401 Ninth Street, N.W.<br>Suite 1000<br>Washington, D.C. 20004-2134<br>Telephone: (202) 274-2950<br>Facsimile: (202) 274-2994 | Michael F. Huber<br>Richard Hugh Lumpkin<br>Maria Caldera<br>Ver Ploeg & Lumpkin<br>100 SE 2nd Street<br>30th Floor<br>Miami, FL 33131-2158<br>Telephone: 305-577-3996<br>Facsimile: 305-577-3558 |

DOCSNY-463594v1